[Civ. No. 19875.   Second Dist., Div. One.   Jan. 25, 1954.]

TEXTILE, INC. (a Corporation), Appellant, v. WILLIAM P. COLEMAN et al., Respondents.

Aaronson & Shapero, Judith B. Aaronson and Martin M. Shapero for Appellant.

David Lynn, Wm. F. Kistler, DeForrest Home, Wilbur D. Finch, McClean, Salisbury, Petty & McClean and Don Petty for Respondents.

DORAN, J.—Appellant, as plaintiff, instituted the present action for the purpose of recovering damages for alleged breach of the implied covenant of quiet enjoyment in a lease, and for being fraudulently induced to enter into said lease. The trial court held that no eviction had taken place and gave judgment in favor of the respondent defendants.

The property involved herein is the Margent Building, 204 N. Market Street in Inglewood, a two-story structure, the first floor of which consists of storerooms, one of which was occupied by Norlo Stores, Inc., prior to appellant's occupancy. The second floor consists of offices, nó part of which is involved in the present controversy. One block to the eastward was a parking lot separated from the Margent Building by an alley, which was leased from its owners by Coleman and Ott, owners of the Margent Building, and used from time to time by Norlo Stores customers and other tenants of the building. At 200 North Market Street was located a small vacant lot known as Norlo Square, which was landscaped with trees and contained benches used by the general public.

In April, 1948, Max Altman, predecessor and president of plaintiff corporation, Textile, Inc., purchased fixtures and stock in trade of Norlo Stores, Inc., from its assignee for benefit of creditors. Altman approached Richard Ott, one-third owner of the Margent Building and Norlo Square, to discuss the leasing of the storeroom at 204 N. Market Street. This was in April or May of 1948. Altman was given a copy of the lease under which Norlo Stores, Inc., had rented the storeroom, and showed the lease to an attorney. Rejecting this form of lease, further negotiations were conducted with Ott concerning such matters as parking, reservation of side walls, etc.

The record discloses that during these negotiations Ott informed Altman that the lease on the parking lot hereinbefore mentioned expired in March, 1949; that Ott did not know if it could be renewed, and that therefore parking privileges could not be included in the lease. Ott also dis-

cussed with Altman a proposed building to be erected on Norlo Square, as a result of which Altman demanded a limitation on renting any of the surrounding premises to a competing business. The trial court found that Altman knew that this new building would block off a 6x8-foot stationary window in the south wall of the storeroom. During the negotiations and before a lease was signed, Altman moved into the storeroom, and paid rent thereon, conducting the same business as that of the Norlo Stores, Inc.

The ultimate lease, prepared by tenant Altman's attorney, and signed about the first of June, 1948, covered a five-year period, and in July was duly assigned to appellant Textile, Inc., of which Altman was the president. In terms, the written lease covered:

"Those certain premises . . . more particularly described as follows, to-wit: 204 North Market Street, Inglewood, California, limited to those areas now occupied by Norlo Stores, Inc., including an inventory and stock room."

No mention was made of any parking arrangements or facilities, nor did the lease contain any provision concerning the stationary window (which could not be opened), used for display purposes. During the first part of appellant's occupancy, its customers made use of the parking lot heretofore mentioned.

The lease contained a further provision that:

"Lessee shall permit lessor and his agents to enter into and upon said premises at all reasonable times for the purpose of inspecting the same or for the purpose of maintaining the building . . . or for the purpose of making repairs, alterations or additions to any other portion of said building."

As hereinbefore mentioned, the written lease was prepared by the attorney for Altman, appellant's predecessor, after negotiations with the lessors.

About December 1, 1948, Norlo Square was prepared for the erection of a building, and about this time, the window in the south wall of the storeroom was bricked up. In February, 1949, Norlo Square and the Margent Building were sold to the defendant Krause who later sold the property to the defendants Barron. The building on Norlo Square was completed by the Barrons in June or July of 1949.

The trial court held that the leased premises were "limited," in the language of the lease, to the areas occupied by Norlo Stores, Inc.; that at the time the lease was executed, Altman, plaintiff's predecessor and the lessee, knew that a

building was to be erected on Norlo Square and that as result thereof, the display window on the south wall of the Margent Building would be closed, and further knew that "the parking privileges were not included in the lease."

It was further found that plaintiff had not been evicted from the demised premises; that "the character of the leased premises has not been changed, destroyed or lessened in value, and that the quiet enjoyment of the leased premises has not been breached or interfered with wrongfully or otherwise by defendants."

One of appellant's main contentions is that "The parol evidence rule was violated" in the admission of testimony concerning the terms of lease entered into between defendant Coleman and Norlo Stores, Inc., plaintiff's predecessor, a copy of which lease, as the trial court found, was delivered to Max Altman by defendant Ott. This lease contained a provision reserving to lessor the right to erect a building on Norlo Square. Appellant likewise complains of the admission of parol evidence concerning conversations and negotiations between the parties prior to execution of the written lease, concerning erection of the Norlo Square building, parking rights, etc. In this connection, appellant asserts that parol evidence was inadmissible since the lease was not ambiguous nor uncertain.

No reversible error appears to have been committed by the trial court, in permitting introduction of such evidence. Although complaining of an alleged violation of the parol evidence rule, appellant, in the same breath, apparently desires the reviewing court to write into the written lease something which is not there.

As said in respondents' brief, "In determining what constitutes the demised premises, the lease is controlling." The written contract makes no mention of nor provision concerning the use of any parking space, nor for the continuance of the window in question. Had these matters been deemed of vital importance it is reasonable to assume that the lease, prepared by Altman's attorney, could have contained some definite and specific provision relating thereto. The very purpose of a writing is to set such matters at rest.

The lessor, by the terms of the lease, acquired no rights in reference to Norlo Square, and no parking privileges. And as previously mentioned, the lessor reserved the right to enter the premises for the purpose of making "repairs, altera-

tions or additions." The terms of the lease, drawn by the lessee's attorney, must, as provided by section 1054 of the Civil Code, "be interpreted most strongly against the party who caused the uncertainty to exist."

By introducing parol evidence to show the circumstances surrounding the execution of the written lease, the defendants were, in effect, merely rebutting plaintiff's contention that the lease did not mean what it said but was intended to include parking facilities and other privileges not mentioned in the written instrument. ▇ Having raised the issue that the intended lease was much broader in scope than indicated by the terminology employed by lessee's attorney, appellant is hardly in a position to complain that the trial court heard evidence as to the surrounding circumstances.

Appellant's further contention that prejudicial error was committed in the exclusion of certain evidence, is not borne out by the record. In part, as pointed out in respondent's brief, evidence as to the nature and improvement of Norlo Square, etc., was already before the court. ▇ As to other matters, the excluded evidence does not appear to have been of such a nature as to change the trial court's decision; consequently, the alleged error cannot be deemed prejudicial to appellant's rights.

The record fails to support appellant's statement that "The findings are contradictory and uncertain." On the contrary, the court's findings and decision appear to be definite and certain in giving effect to the plain terms of a written instrument, and in following the long-established rule that no court has authority to make a contract for the parties, or to write into a lease material terms which, as in the present case, would greatly broaden a lessee's rights.

▇ Were the appellant's position to be sustained, neither lessor nor lessee would be able to rest on the assurance that protection is afforded by a written lease. When it is considered that the lease in question was drafted, not by the lessor but by the lessee, the only reasonable assumption is that all matters deemed relevant or material were duly discussed and that the written instrument represents the actual meeting of minds at that time.

The fundamental concept advanced by appellant seems to be that, since previous lessees enjoyed a permissive use of certain parking areas and other privileges, appellant is entitled to a continuation thereof although the written lease afforded no such protection. The leased premises were "lim-

ited to those areas now occupied by Norlo Stores, Inc." Norlo Stores "occupied" nothing more than that part of the building which appellant later took over under a new lease. Whatever other special privilege or permissive use may have been enjoyed either by Norlo or by appellant can have no contractual significance in the face of a carefully considered written lease containing no such provisions.

Findings and judgment are supported by substantial evidence, and the record reveals no prejudicial error.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 25, 1954.